UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

TANEKA STONEMAN,

    Plaintiff,

v.                                          CIVIL ACTION NO. 5:21-cv-00147

C.O. BROWN *individually,
and in her official capacity*, C.O. JOHN
and JANE DOE I-X *individually, and in
their official capacity;* JOHN DOE, *unknown
person or persons*, WEST VIRGINIA DIVISION
OF CORRECTIONS AND REHABILITATION,
and C.O. BARE,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is Defendants C.O. Brown and C.O. Bare's Motion for Summary Judgment, filed April 21, 2022. [Doc. 96]. Plaintiff responded on May 2, 2022. [Doc. 103]. Defendants replied on May 5, 2022. [Doc. 106]. The matter is ready for adjudication.

### I.

This action arises out of Plaintiff Taneka Stoneman's brief incarceration at Southern Regional Jail ("SRJ") from July 15 to 20, 2020. Ms. Stoneman had been arrested and was awaiting a probation revocation hearing. She alleges C.O. Brown denied her a shower, slammed her head into a wall, gave her an inadequate bag of necessities, deactivated her phone and commissary privileges, threatened to deactivate her access card, refused to provide her necessities to shower, and called her a derogatory name. She contends that C.O. Bare grabbed her, shoved her in a cell causing the loss of a tooth, and shoved her into a wall causing bruising and an open wound on her hand. [Doc. 1-1].

Ms. Stoneman contends the events which caused her physical injuries proceeded in the following manner. She asserts she was on the phone in the booking area of SRJ when C.O. Brown told her it was time to take detox medication. She initially refused, claiming she was not detoxing, but took the medication. She returned to the phone, and she was told to end her call. When she refused, a male guard "snatched the phone" from Ms. Stoneman, hitting her face as he hung up the receiver. Ms. Stoneman began loudly accusing the guard of busting her lip. C.O. Bare then directed Ms. Stoneman to enter the booking area cell, H-4. Ms. Stoneman entered the cell and C.O. Bare followed, presumably to retrieve a prior inmate's mattress and belongings. She claims C.O. Bare accused Ms. Stoneman of hitting her in the stomach with the mattress, causing C.O. Bare to grab Ms. Stoneman, push her arm behind her back, and shove her head into the wall as she bent over the bedframe. C.O. Brown entered the cell, and C.O. Richardson stood in the doorway. C.O. Brown stated Ms. Stoneman had been a "smart ass" and smashed Ms. Stoneman's head into the wall, cutting her forehead and causing a tooth to fall out. Ms. Stoneman suffered a seizure after this encounter.[1] [Doc. 103 at 2].

Ms. Stoneman instituted this action under 42 U.S.C. § 1983 in the Circuit Court of Raleigh County, and the West Virginia Division of Corrections and Rehabilitation ("WVDCR") removed on February 26, 2021. [Doc. 1]. WVDCR and the official capacity claims against C.O. Bare and C.O. Brown were dismissed on the basis of sovereign immunity. [Doc. 63]. Ms.

---

[1] The Defendants provide conflicting accounts of these events. C.O. Brown asserts she entered the cell because Ms. Stoneman got in C.O. Bare's face after C.O. Bare followed her into the cell. After C.O. Brown entered the cell, she contends both officers put their hands on Ms. Stoneman to make her sit on the bench. [Doc. 96-1 at 43 – 45]. C.O. Bare denies that Ms. Stoneman got in her face. Instead, she asserts that once C.O. Brown entered the cell, C.O. Bare grabbed Ms. Stoneman's shirt so she would sit down while C.O. Bare retrieved the previous inmate's belongings. She contends C.O. Brown did not touch Ms. Stoneman. [Doc. 96-3 at 26 – 27]. The facility video depicts different angles of the booking area, but only a small portion of Cell H-4 is visible. None of the alleged incident within H-4 is visible on the video. [Doc. 108].

Stoneman's individual capacity claims against C.O. Bare and C.O. Brown remain.[2] Defendants C.O. Bare and C.O. Brown move for Summary Judgment, again asserting the defense of qualified immunity. [Doc. 96].

## II.

**A.	Motion for Summary Judgment**

Rule 56 of the *Federal Rules of Civil Procedure* provides that summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the allegations of her pleadings." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)).

---

[2] Specifically, Ms. Stoneman asserts claims against the Defendants for violations of her rights under the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution; violations of her rights under Article Three of the West Virginia Constitution; and state law tort claims for outrageous conduct, intentional infliction of emotional distress ("IIED"), invasion of privacy, and harassment. [Doc. 1]. To the extent Defendants are uncertain whether Plaintiff's claims under the Fourth, Fifth, Eighth, and Ninth Amendments survive, [Doc. 101 at 8 – 9], the Court clarified this question in adjudication of the Motions to Dismiss. [Doc. 63 at 6 – 7]. The Court did not dismiss the individual capacity claims pled under the listed amendments; rather, the Court narrowed the inquiry based upon established precedent. And established precedent states Ms. Stoneman's claims, as a pretrial detainee, are only actionable under the Fourteenth Amendment. [*Id.*]. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir.1988)). Plainly, these claims have been preserved in an appropriately actionable manner under the Fourteenth Amendment, but no claims arise independently from the Fourth, Fifth, Eighth, or Ninth Amendments in this context. The constitutional claims under the West Virginia Constitution and the state law tort claims remain.

The Court must "view the evidence in the light most favorable to the [nonmoving] party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal quotation marks omitted); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). "The court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *see also Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment.

**B.     42 U.S.C. § 1983**

Title 42 U.S.C. § 1983 governs actions against state officers for certain civil rights violations as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. A state actor sued in her individual capacity for monetary damages generally qualifies as a suable "person" under Section 1983. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). But she may be entitled to qualified immunity. Qualified immunity is available only to those who do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted). "To

determine if the right in question was clearly established, we first look to cases from the Supreme Court, this Court of Appeals, or the highest court of the state in which the action arose." *Thompson v. Commonwealth of Va.*, 878 F.3d 89, 99 (4th Cir. 2017) (citing *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004)). Absent "directly on-point, binding authority," courts may also consider whether "the right was clearly established based on general constitutional principles or a consensus of persuasive authority." *Booker v. South Carolina Dep't of Corrections*, 855 F.3d 533, 543 (4th Cir. 2017); *Owens*, 372 F.3d at 279. Put simply, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

To establish an excessive force claim, the plaintiff must show "that the force purposely or knowingly used against [her] was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 – 97 (2015); *Dilworth v. Adams*, 841 F.3d 246, 255 (4th Cir. 2016). Courts assess objective reasonableness "from the perspective of a reasonable [correctional] officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397. Further, a court should view the use of force "in full context, with an eye toward the proportionality of the force in light of all the circumstances." *Smith v. Ray*, 781 F.3d 95, 101 – 02 (4th Cir. 2015) (citing *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005)); *T.W. ex rel. E.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018). In the correctional context, courts must account for the government's legitimate interests in managing the facility, "appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Kingsley*, 576 U.S. at 397 (internal quotation marks and brackets omitted).

Nevertheless, "[i]n considering the reasonableness of an officer's actions, [the court] must consider the facts at the moment that the challenged force was employed." *Ray*, 781

F.3d at 101. Foremost, "the reasonableness of force employed can turn on a change of circumstances during an encounter lasting only a few seconds." *Harris v. Pittman*, 927 F.3d 266, 274 (4th Cir. 2019) (*citing Waterman*, 393 F.3d at 481); *Betton v. Belue*, 942 F.3d 184, 191 (4th Cir. 2019). And our Court of Appeals "ha[s] made clear that the justification for using protective force expires at the very moment a threat is neutralized." *Dean v. Jones*, 984 F.3d 295, 305 (4th Cir. 2021); *see also*, *e.g.*, *Waterman*, 393 F.3d at 481.

### III.

In viewing the record in the light most favorable to Plaintiff, the Court finds that genuine issues of material fact exist as to the use of force against Ms. Stoneman. The facility video does not depict the events as they occurred inside Cell H-4, and the testimonies of Plaintiff and both Defendants are inconsistent. The factual inconsistencies between the parties' testimonies do not allow the Court to consider the thin yet important line between legitimate correctional force and excessive force. Inasmuch as this purely factual determination is extant, and the Court is required to treat as true Ms. Stoneman's version of events, neither prong of the qualified immunity inquiry is susceptible to judgment as a matter of law.

Based upon the foregoing discussion, the Court **DENIES** C.O. Brown and C.O. Bare's Motion for Summary Judgment. **[Doc. 96]**.

The Clerk is directed to transmit a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTER: July 26, 2022

Frank W. Volk
United States District Judge